

FILED IN CLERK'S OFFICE
U.S.D.C Atlanta

FEB 2 9 2008

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MARILYN MELDER, et al., )
)
    Plaintiffs, )
) CIVIL ACTION NO.
) 2:03-CV-2499*
v. )
) * Action is pending in the United
) States District Court for the Eastern
STATE FARM MUTUAL ) District of Louisiana
AUTOMOBILE INSURANCE )
COMPANY, STATE FARM FIRE )
AND CASUALTY COMPANY, et ) Miscellaneous Action No.
al., ) 1 08-MI-0075 RWS
)
    Defendants-Movants. )

---

## MEMORANDUM OF LAW IN SUPPORT OF
## STATE FARM'S MOTION TO QUASH SUBPOENAS ISSUED BY
## COUNSEL FOR PLAINTIFFS ON BEHALF OF THIS COURT TO
## CHOICE POINT, INC. and MOSTCHOICE.com, INC.
## AND FOR A PROTECTIVE ORDER

Pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure,

State Farm Mutual Automobile Insurance Company and State Farm Fire and

Casualty Insurance Company ("State Farm"), defendants in the above-styled

case pending in the Eastern District of Louisiana, move this Court to quash

two Rule 45 subpoenas issued by Plaintiffs' Counsel pursuant to Rule

45(a)(3) of the Federal Rules of Civil Procedure and enter a protective order

as to the documents sought by the non-party subpoenas. Plaintiffs' subpoenas seek documents and purport to require non-parties Choice Point, Inc. and MostChoice.com, Inc. to produce and permit inspection of "any and all information on sales of leads" provided to State Farm or any of its subsidiaries.

This Court should quash the two subpoenas for several reasons. First, the subpoenas seek information that is currently being sought by Plaintiffs directly from State Farm in this case currently pending in the Eastern District of Louisiana ("the forum court"). The fact that this information has been already sought directly from State Farm and is the subject of a fully-briefed motion to compel pending before the forum court is alone a sound basis for this Court to quash the subpoenas. It is clear that Plaintiffs are attempting to use non-party subpoenas to circumvent the discovery process in the forum court and make an end-run around of the discovery dispute pending there. Second, as argued in the matter pending in the Eastern District of Louisiana, the information sought extends beyond the scope of the actual claims alleged by Plaintiffs and any defenses or other subject matters raised by the pleadings in the instant case. Third, pursuant to Fed. R. Civ. P. 45(a)(2)(C), the subpoenas issued from this Court are

- 2 -

procedurally deficient, and respectfully, this Court lacks jurisdiction to enforce them, as Plaintiffs explicitly seek to compel the production and inspection to be made at Plaintiffs' counsel's office in Slidell, Louisiana, which is outside this district and beyond its subpoena powers. Fourth, the subpoenas are overbroad on its face, seeking "any and all information" without providing any further specificity or limitations, and by lacking any temporal limitation.[1]

## I. BACKGROUND

## A. The Underlying Litigation in the Eastern District of Louisiana

On July 1, 2003, Plaintiffs brought a putative class action lawsuit in the Civil District Court for the Parish of Orleans, State of Louisiana alleging that State Farm used credit scores to commit discrimination. [*See* Doc. No. 1, *Melder, et al v. Allstate Corp., et al*, Case No. 2:03-CV-02499-JCZ-ALC

---

[1]    Further highlighting Plaintiffs' counsel's far-reaching and persistent tactics, State Farm notes that MostChoice.com, Inc. has already responded to Plaintiffs subpoena stating that it "has no documents responsive to the subpoena issued in the matter." [*See* Letter of February 25, 2008, from Ryan L. Isenberg, Attorney for Mostchoice.com, Inc. to Tom W. Thornhill (Plaintiffs' Counsel), attached as Exhibit A to Appendix of Materials in Support of State Farm's Motion to Quash and for Protective Order]. In this letter, counsel for Mostchoice.com, Inc. goes on to remind Plaintiffs' counsel that Mostchoice, Inc. has already provided testimony on this very issue in a deposition from another case against State Farm, further pointing out that Plaintiffs' counsel was, in fact, in attendance where the Chairman and Founder of the company, Michael Levy, testified that "Mostchoice had not done business directly with any of the State Farm Companies." [*Id.*]. Notwithstanding that they apparently already obtained sworn testimony answering the question, unconcerned about overburdening any non-parties or further expanding discovery and expending the parties' and courts' resources, Plaintiffs nevertheless subpoenaed Mostchoice.com, Inc. anyway. Similarly, counsel from the non-party subpoenaed in New York has responded to Plaintiffs' counsel stating that Plaintiffs' counsel has already elicited sworn deposition testimony from a Claritas representative. [See Letter of February 29, 2008, from Anna B Charkow, Attorney for Claritas, Inc. to Tom

(E.D.La. Jul. 1, 2003)]. The case was removed to the Eastern District of Louisiana on September 3, 2003. [*Id.*]. On April 27, 2005, with leave of court, Plaintiffs filed their "Amended and Restated Class Action Complaint" (E.D.La. doc. no. 49) [Attached as Exhibit B to Appendix of Materials Materials in Support of State Farm's Motion to Quash and for Protective Order ("Appendix")]. On October 31, 2007, Plaintiffs filed their "Third Supplemental and Amended Class Action Complaint" against State Farm (E.D.La. doc. no. 191). [Attached as Exhibit C to Appendix of Materials].[2]

From Plaintiffs' multiple pleadings, and their Complaint, as amended, Plaintiffs specifically allege that State Farm used credit scores and credit scoring algorithms in such a way that consumers were "(1) cancelled, (2) rejected, (3) rated up, (4) placed in a higher risk, and/or (5) charged higher premiums." [*See* Ex. B to App'x, at 13-14, § IX]. The time has expired for Plaintiffs to amend their Complaint further to add new allegations or expand their claims or the scope of the issues in dispute.

Using deposition testimony from unrelated litigation, Plaintiffs' counsel inquired about State Farm's use of sales leads from third parties in a

W. Thornhill (Plaintiffs' Counsel), attached as Exhibit I to Appendix of Materials in Support of State Farm's Motion to Quash and for Protective Order].

[2] Plaintiffs' Second Amended and Restated Complaint, filed on August 6, 2007, pertains solely to allegations against Allstate defendants, and the claims against the Allstate defendants have been severed

-4-

December 2007 letter to counsel for State Farm. Then, in January 2008, Plaintiffs filed a motion in the Louisiana forum court to compel discovery from State Farm concerning sales leads obtained from third parties, and claimed that the information was within a prior written discovery request seeking "any and all documents indicating any prospective customers for homeowner's or automobile insurance who were declined insurance based on credit score(s), insurance score, economic condition of the customer and/or race for the period 1993 to date." [*See* "Defendants' Post Hearing Memorandum" (filed 02/06/08) (E.D.La. doc. no. 213), attached as Exhibit D of Appendix of Materials, at 7].

That written discovery request is explicitly focused on and limited to "prospective customers . . . who were *declined insurance* based on credit scores . . .," any sales leads used for marketing purposes unrelated to any actual applications and coverage determinations were plainly not within the scope of the discovery. For this reason and because any discovery regarding sales leads would be beyond the scope of the claims and defenses alleged and at issue in the case, State Farm has opposed this attempt by Plaintiffs to expand discovery outside their claims as pled. That discovery

---

from Plaintiffs' case against State Farm. [*See* Doc. No. 160, *Melder, et al v. Allstate Corp , et al*, Case No.

LEGAL02/30716324v1

dispute remains pending in the Eastern District of Louisiana, where it was fully briefed by the parties, addressed in oral argument, and is ripe for decision.[3]

## B. Plaintiffs' Rule 45 Subpoenas Issued to Choice Point, Inc. and MostChoice.com, Inc.

On February 18, 2008, Plaintiffs served State Farm with copies of three subpoenas it had issued to non-parties. In addition to the two subpoenas involved in this motion to quash that were issued by Plaintiffs' counsel on behalf of this Court to Choice Point, Inc. and MostChoice.com, Inc., that same day, Plaintiffs' counsel also issued a similar subpoena on behalf of the Southern District of New York to non-party Claritas, Inc.

The subpoenas are identical in all substantive respects seeking "[a]ny and all information on sales of leads from [the non-parties] to State Farm Mutual Automobile Insurance Company or to any of its subsidiaries." [See Choice Point, Inc. subpoena, attached as Exhibit E to Appendix of Materials;

---

2:03-CV-02499-JCZ-ALC (E.D.La. Aug. 6, 2007)].

[3] Filings and orders directly addressing the pending discovery in the forum court concerning sales leads include the following docket entries in *Melder, et al v Allstate Corp., et al*, Case No. 2:03-CV-02499-JCZ-ALC in the Eastern District of Louisiana: Doc. No. 200 (Memorandum in Support of Motion for Sanctions and Contempt, 01/09/08); doc. no. 205 (State Farm's Response/Memorandum to Motion for Sanctions, 01/23/08); doc. no. 210 (Minute Entry by Court regarding Motion Hearing, 01/30/08); doc. no. 213 (State Farm's Post Hearing Memorandum, 02/06/08); doc. no. 220 (Plaintiffs' Post Hearing Memorandum, 02/12/08); doc. no. 221 (Minute Order from Hearing on Motion, 02/13/08); doc. no. 222 (State Farm's Response to Plaintiffs' Post-Hearing Submission, 02/18/08); doc. no. 225 (Plaintiffs' Response/Reply to State Farm's Response to Plaintiffs' Post-Hearing Memorandum, 02/19/08); doc. no 229 (Minute Entry from Status Conference, 02/20/08); and doc no. 237 (State Farm's Reply to Plaintiffs'

LEGAL02/30716324v1

MostChoice.com, Inc. subpoena, attached as Exhibit F to Appendix of Materials; Claritas, Inc. (S.D.N.Y.) subpoena, attached as Exhibit G to Appendix of Materials].    Likewise, each subpoena requests that the production and inspection be made at the office of Plaintiffs' counsel in Slidell, Louisiana, by March 3, 2008, at 10 a.m. [*See id.*].    The information sought by Plaintiffs in the non-party subpoenas is the same information presently being sought by Plaintiffs from State Farm in the discovery matter currently pending before the forum court in the Eastern District of Louisiana.

State Farm moves this Court seeking to quash the subpoenas issued by Plaintiffs' counsel on behalf of this Court to Choice Point, Inc. and MostChoice.com, Inc.

## II.   ARGUMENT AND CITATIONS OF AUTHORITY[4]

As the issuing court, this Court has jurisdiction to rule on this motion

---

Reply, 02/26/08).

[4] State Farm has standing to bring this motion to quash. "[T]he general rule of the federal courts [is] that a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed.'" *Stevenson v. Stanley Bostitch, Inc*, 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (citing numerous cases); *see also Chamberlain v. Farmington Sav. Bank*, Civil No 3:06CV01437 (CFD), 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007) ("[T]he court notes that the [party] has standing to challenge the subpoenas on the basis of having moved for a protective order pursuant to Rule 26."). State Farm has standing to challenge the subpoenas, because among other reasons, Plaintiffs have sought this same information directly from State Farm in the forum court where a contested discovery dispute over disclosure of the documents sought in the subpoenas is currently pending    Allowing production would undermine State Farm's right to be heard in the forum court and effectively moot this discovery dispute between the parties.    State Farm has standing to challenge Plaintiffs' attempt to circumvent and make an end-run around the discovery process in the forum court, and seek through non-party subpoenas,

to quash the Rule 45 Subpoenas issued by Plaintiffs' counsel on behalf of this Court. *See* Fed. R. Civ. P. 45(c)(3)(A) (providing that the "issuing court" may quash or modify the subpoena on timely motion); *See also Fincher v. Keller Indus.*, Inc., 129 F.R.D. 123, 125 (M.D.N.C. 1990).

## A.     The Subpoenas Exceed the Bounds of Permissible Discovery as Established in the Pending Action in the Forum Court.

"It is well-settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Chamberlain v. Farmington Sav. Bank*, Civil No. 3:06CV01437 (CFD), 2007 WL 2786421 at *1 (D. Conn. Sept. 25, 2007) (quashing subpoenas upon motion by party in part because subpoenas exceeded permissible scope of discovery).   The Advisory Committee Notes to the 1970 Amendment to Rule 45 make this clear, providing that "[t]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); *see also Laethem Equip. Co. v. Deere & Co.*, No. 05-CV-10113-BC, 2007 WL 2873981, at *4 (E.D. Mich. Sept. 24, 2007) ("The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1).") (citing cases) (internal quotation omitted).   Thus, for the same reasons that the

documents that are beyond the scope of permissible discovery.

documents are beyond the scope of discovery between the parties pursuant to Rules 26 and 34, the documents should not be obtainable through non-party subpoenas issued from a different district court using Rule 45.

Plaintiffs' subpoenas seek the production and inspection of the following documents from non-parties Choice Point, Inc. and MostChoice.com, Inc.: "[A]ny and all information on sales leads . . . to State Farm Mutual Automobile Insurance Company or to any of its subsidiaries." [See Exs. E & F to App'x]. Third party leads are not applications for insurance. Rather, leads are lists of potential customers that can be purchased from data collection agencies. From these lists, a company can send out unsolicited mailings to consumers who may or may not be interested in that company's products or services and who may or may not apply for coverage. Many of the leads never respond or even apply for coverage with State Farm. Similarly, applications for insurance coverage may come from individuals who were never on a "leads" list. The credit scoring lead information sought by Plaintiffs and raised for the first time in December 2007, has no connection to the allegations of Plaintiffs' complaint first filed in 2003, and amended on three occasions.

None of Plaintiffs' pleadings raise any claims related to the use of

sales leads or even address State Farm's marketing efforts in any way. Plaintiffs' actual complaint alleges discrimination in determining whether to extend coverage applied for, to maintain and renew coverage, and the costs of coverage based on the use of credit information. Specifically, the Amended and Restated Complaint alleges that State Farm used credit scores and credit scoring algorithms in such a way that consumers were "(1) cancelled, (2) rejected, (3) rated up, (4) placed in a higher risk, and/or (5) charged higher premiums." [Ex. B to App'x, at 13-14, § IX.] In the Amended Complaint, Plaintiffs allege that State Farm intentionally discriminated against Black/African-Americans and individuals living in areas populated more heavily by non-Caucasians by "utilize[ing] a credit scoring algorithm to effect rejection, cancellation, rating up, placing in a higher risk, and/or charged higher premiums." [*See id.* at 4; *see also id.* at 11 & 13-14]. Plaintiffs identify the following class and subclass in their Motion to Certify:

> Any individual: (1) that is Black/African American; (2) in the United States where the use of credit scoring or insurance scoring is permitted and practiced by State Farm; (3) who was/is harmed by State Farm's discrimination on the basis of race and/or the economic condition of the area, as a result of (a) being charged a premium for a policy of auto or homeowner's insurance that was anything but the lowest available premium based in whole or in part on credit information, or (b)

not being sold a policy issued by State Farm or one of its affiliates, based on one of the following: (1) race; (ii) the economic condition of the neighborhood; or (iii) the credit information included in the insurance score used by State Farm.

and

Any individual: (1) that is Black/African American; (2) that is residing in Louisiana; (3) who was/is harmed by State Farm's discrimination on the basis of race and/or the economic condition of the area, as a result of (a) being charged a premium for a policy of auto or homeowner's insurance that was anything but the lowest available premium based in whole or in part on credit information, or (b) not being sold a policy issued by State Farm or one of its affiliates, based on one of the following: (i) race; (ii) the economic condition of the neighborhood; or (iii) the credit information included in the insurance score used by State Farm.

[*See* Doc. No. 145, Motion to Certify Class and Subclass as to Plaintiffs' Claims Against State Farm and Appoint Class Counsel, *Melder, et al v. Allstate Corporation, et al*, Case No. 2:03-CV-02499-JCZ-ALC (E.D. La. Jun. 29, 2007, at 3-4].

The specific allegations of Plaintiffs' Complaint, as amended, allege that State Farm discriminated through the use of insurance scores to reject, rate-up or refuse to renew coverage. There are *no* allegations that purport to state a claim based upon the use of credit score leads.[3] Nor are there any allegations in Plaintiffs' pleadings related to the use of insurance scores in marketing any State Farm product. Because leads are used only in blind

or unsolicited marketing and are not related to rejections, rating or renewal of coverage, whether or how State Farm uses leads is neither relevant nor material to this litigation.

Plaintiffs mistakenly argue that a decision not to market a product to specific individuals is the same as denying coverage. This is merely a transparent post-hoc attempt to somehow make the wanted discovery fit within the scope of the claims and allegations pled by Plaintiffs. Underwriting decisions regarding denial or acceptance of coverage, however, are independent of marketing decisions. A solicitation to an individual does not mean that they will even apply for coverage. Needless to say, if they do not apply, they cannot be rejected, rated up or non-renewed. Likewise, the fact that an individual does not receive a solicitation does not mean that they will be denied coverage, and there is no support for Plaintiffs' contention to the contrary. Plaintiffs do not dispute the incontrovertible fact that the information sought relates to marketing rather than coverage determinations. Plaintiffs attempt to re-read and expand their pleading allegations to encompass their new discovery requests simply defies all reason, logic, and the Federal Rules of Civil Procedure.[5]

---

[5] For example, compare the above-quoted complaint allegations claiming that customers were declined,

Discovery is properly confined to the claims and defenses asserted in the pleadings. Rule 26(b)(1) defines the scope of discovery. It provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim or defense* . . . . For *good cause*, the court may order discovery of any matter relevant to the *subject matter* involved in the action." Fed. R. Civ. P. 26(b)(1) (emphasis added). In *Dellacasa, LLC v. John Moriarty & Associates of Florida, Inc.*, No. 07-21659-CIV, 2007 WL 4117261 (S.D. Fla. Nov. 16, 2007), the court explained that "[s]ubdivision (b)(1) was amended in 2000. The Advisory Committee Notes to the 2000 Amendments explain that the Committee was concerned with "overbroad discovery" and intended for "the parties and the court to focus on the actual claims and defenses involved in the action." *Id.* at *1

---

cancelled, rated up, placed in a higher risk, or not renewed with a recent brief filed by Plaintiffs in connection with the discovery dispute pending in the Eastern District of Louisiana. [*See* Doc. No. 220 *Melder, et al v. Allstate Corp , et al*, Case No. 2:03-CV-02499-JCZ-ALC (E.D. La. Feb. 12, 2008)]. Now seeking discovery concerning marketing leads, Plaintiffs go to great lengths to create and use buzz words and labels not previously used in their pleadings to describe their claims, in an attempt to make a connection between the marketing leads and Plaintiffs' claims which focus on coverage determinations. In their recent submission related to the discovery dispute, Plaintiffs refer to the leads as efforts to "limit" or "restrict" the "customer base" [*id.* at 2, 3, 4, 11, 14, 15, 20], to preclude Plaintiffs "from the pool of customers," [*id.* at 2], to "eliminate potential customers" [*id* at 4], and to "screen customers." *[Id.* at 3, 4, 14, 15*]*. Plaintiffs now attempt to broaden the focus of the claims, dispatching with the specifics and simply calling everything part of the same, big, overall "insurance process." [*Id* at 16-17]

Plaintiffs even go as far as to claim that the marketing leads "deny[] [applicants] in advance of applying," equating the failure to receive unsolicited advertising as a denial of an insurance application. [*Id.* at 14]. And, in trying to refute State Farm's well-founded focus on the obvious and material distinctions between the use of marketing leads and the coverage determinations claimed to be discriminatory in Plaintiffs' pleadings, Plaintiffs characterize State Farm's argument as focusing on the fact that the customer has not "technically applied yet." [*Id.*] Clever characterizations and use of words and phrases simply will not

(quoting Fed. R. Civ. P. 26, Advisory Comm. Notes, 2000 Amendment).

Parties are not entitled "to discovery to develop new claims or defenses that are not already identified in the pleadings," and courts have the "authority to confine discovery to the claims and defenses asserted in the pleadings." *Dellacasa, LLC v. John Moriarty & Assoc. of Fla., Inc.*, No. 07-21659-CIV., 2007 WL 4117261, at *1 (S.D. Fla. Nov. 16, 2007). The Court should determine the scope of discovery "according to the reasonable needs of the action, . . . depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." *Id.*

In *Dellacasa*, the court explained that "[a]lthough discovery rules should be liberally construed, they must nonetheless be limited by other considerations such as reasonableness, relevance and burdensomeness, and then held that the discovery sought was "beyond the actual claims and defenses asserted in the instant case," and denied the motion to compel. *Id.* at *3.

Plaintiffs' pleadings do not contain any allegations regarding the use of credit or insurance scores in marketing, and Plaintiffs are not entitled to

---

overcome the fact that Plaintiffs' discovery plainly extends beyond the subject matter of the claims alleged

discovery on this issue. Plaintiffs' complaint is limited to allegations regarding the use of credit or insurance scores to reject, rate up or decline coverage. Because the third-party discovery sought here bears no relationship to Plaintiffs' claims, the subpoenas should be quashed and a protective order entered.

**B.** **The Subpoenas Seek to Obtain the Same Information from Non-Parties that Has Already Been Sought From State Farm and is the Subject-Matter of an Unresolved Discovery Matter Currently Pending in the Forum Court.**

As mentioned above, a fully briefed discovery dispute is currently pending in the forum court. In the pending discovery matter, Plaintiffs have sought any and all documents related to the use of credit scoring leads from third parties, which necessarily would include any documents sought directly from the non-party by the subpoena at issue here. Thus, the very information sought in the non-party subpoenas has already been sought from State Farm and is part of the subject matter of the discovery dispute that has been fully briefed in the forum court and is ripe for decision.

State Farm has challenged these discovery efforts as part of its challenge to Plaintiffs' attempts to expand discovery beyond the claims and defenses raised by the pleadings. Plaintiffs have amended their complaint

in their pleadings.

three times since its original filing in 2003, yet the claims have consistently alleged a scheme to use credit information to discriminate on the basis of race in making actual coverage determinations on applications and renewals. Plaintiffs attempt to expand discovery to sales leads and marketing is beyond the permissible scope of discovery.

The subpoenas that are the subject matter of this motion call for a production on or before March 3, 2008. Because these very issues are being litigated and are under review and ripe for decision by the forum court, State Farm submits that this Court should quash the subpoenas seeking a disclosure of these documents at this time prior to the forum court's resolution of the discovery dispute between the parties. "Subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Burns v. Bank of America*, No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437, at *14 (S.D.N.Y. Jun. 4, 2007) (citing case and Wright & Miller and explaining that if documents can be sought from a party, they should be sought via regular discovery between the parties). Rule 45 should not be used to circumvent the regular discovery process. *Id.* at *13-14; *see Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, No. 04-3500 (AET), 2007 WL 1613217, *1-3 (D.N.J. Jun. 1,

LEGAL02/30716324v1

2007) (mentioning principles of comity and judicial efficiency as to relevant in similar circumstances); *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 455 (E.D.N.C. 2005) (quashing subpoenas that sought information that was obtainable from party to litigation). The Court should thus grant the Motion quashing Plaintiffs' Subpoena to permit the Forum Court to decide the core dispute.

## C.   The Subpoenas Are Procedurally Deficient and This Court Lacks Jurisdiction to Enforce Them.

The general subpoena power of federal district courts emanates from Rule 45 of the Federal Rules of Civil Procedure.[6]   Rule 45(a)(2), entitled "Issued from Which Court," provides the proper district courts for issuing various types of subpoenas.   "[F]or attendance at a hearing or trial," "[a] subpoena must issue . . . from the court for the district where the hearing or trial is to be held." Fed. R. Civ. P. 45(a)(2)(A).   "[F]or attendance at a deposition," "[a] subpoena must issue . . . from the court for the district where the deposition is to be taken." Fed. R. Civ. P. 45(a)(2)(B).   Lastly, "for production or inspection, if separate from a subpoena commanding a person's attendance," "[a] subpoena must issue . . . from the court for the

---

[6]    State Farm recognizes that some federal statutes also provide alternative subpoena powers under various specific circumstances not relevant to this case.

district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C).

In this case, Plaintiffs' counsel has issued subpoenas on behalf of this Court for production and inspection, and has not commanded the appearance of any non-parties at a deposition or other proceeding. [*See* Exs. E & F to App'x]. The two subpoenas at issue fall within Rule 45(a)(2)(C).

Using Federal Form AO88 (Rev 12/06) Subpoena in a Civil Case, with respect to both subpoenas, Plaintiffs seek to compel production at Plaintiffs' counsel's office in Slidell, LA, listing "Thornhill & Collins, L.C., 1308 Ninth Street, Slidell, LA 70458" as the "Place" of production to be made on March 3, 2008 at 10:00 a.m. Thus, the place "where the production or inspection is to be made," *see* Fed. R. Civ. P. 45(a)(2)(C)— the location where the documents are being demanded to be produced or inspected, is not within or near the jurisdiction or subpoena power of the issuing court; and the subpoenas here, issued from this Court, are improper under Rule 45. The subpoenas prepared by Plaintiffs from this Court purport to compel production in the Eastern District of Louisiana. Therefore, they are procedurally deficient, are issued from the wrong court, and should be quashed.

- 18 -

Federal courts have quashed subpoenas in similar circumstances. For example, in *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5 (D.D.C. 2006), the court reasoned:

> [O]ne of the arguments challenges the jurisdiction of this Court to issue the subpoena, and a challenge of this nature cannot be dismissed without considering whether it has merit. With respect to this challenge, Federal Rule of Civil Procedure 45(a)(2)(C) states that "[a] subpoena must [be] issue[d] ... from the court for the district where the production or inspection is to be made." Therefore, this Court could not issue a subpoena that required Wachovia to produce the documents in Maryland. Accordingly, even though the plaintiffs are otherwise entitled to obtain the subpoenaed records, Single Point's and Dixie Dale's motions to quash the subpoenas must be granted. The plaintiffs must therefore return all information and documents they received from Wachovia pursuant to the subpoena. Any other result would permit the plaintiffs to benefit from information and documents improperly produced to them in the District of Maryland.

*Id.* at 11. After recognizing and holding that it had no jurisdiction to enforce the deficient subpoenas, the court explained that the plaintiffs could seek the same information and documents "if done in compliance with Rule 45 of the Federal Rules of Civil Procedure. Until this occurs, the plaintiffs may not use the subpoenaed records for any purpose." *Id.* at 11 n.6.

In *Kansas City Southern Railway Co. v. Nichols Construction Corp.*, No. 05-01182, 2008 WL 199875, at *3 (E.D. La. Jan. 22, 2008), the court explained:

> Before addressing the issue of whether the subpoena should be quashed, the Court must first determine if it is properly issued. Rule 45(a)(2)(C) provides that a subpoena must issue "from the court, for the district where the production or inspection" of the requested documents is to be made. Here, Selvage requests that Hatchett produce and permit the inspection and copying of various documents in Pearland, Texas, a location beyond the Eastern District of Louisiana. However, the subpoena was issued by the United States District Court of the Eastern District of Louisiana. Consequently, based on Rule 45, the subpoena is procedurally defective because the subpoena is not issued from the court for the district where the production and inspection of the documents is to be had. Accordingly, the subpoena must be quashed.

*Id.* at *3 (internal citations omitted). *See also James v. Booz-Allen & Hamilton, Inc.*, 206 F.R.D. 15, 19 (D.D.C. 2002) ("[T]he subpoena was issued from this court and compels PGHRC to produce documents for inspection in New Carrollton, Maryland. Because the place of production and inspection in this case is outside of the judicial district of this court, the subpoena is improper and is therefore quashed."); *Anderson v. Gov't of the V.I.*, 180 F.R.D. 284, 290 (D.V.I. 1998) (holding that subpoena was defective because, among other reasons, it "demands that documents be produced to the offices of plaintiff's counsel in St. Croix, a location not within the geographic limitations of [Rule 45]," and explaining that "plaintiff's counsel cannot direct the recipient of a subpoena to produce documents to a place outside the geographic limitations of Rule 45.").

- 20 -

Based on the foregoing authority and the explicit provisions and limitations set forth in Rule 45, this Court should quash the two subpoenas as procedurally deficient.

**D.     The Subpoenas Are Facially Overbroad as to Subject Matter and Time.**

Plaintiffs' request is facially overbroad as it requests "any and all information on sales leads" to State Farm or any of its subsidiaries without any further limitations.     Moreover, the forum court has even declared that the relevant time period for purposes of discovery is limited to January 1, 2000 to the present. [*See* Doc. No. 192, Order on Motion, *Melder, et al v. Allstate Corporation, et al*, Case No. 2:03-CV-02499-JCZ-ALC, at 7 (E.D.La. Nov. 5, 2007)].     Thus, by requesting "any and all" records without any temporal limitation, the subpoenas are overbroad on their face. *See generally Franzon v. Massena Mem'l Hosp.*, 189 F.R.D. 220, 222 (N.D.N.Y. 1999) (finding request overbroad when it sought "any and all" documents and provided no meaningful limitations and was not limited to the time period at issue in the case); *see also Viking Yacht Co. v. Composite One LLC*, No. 3:07-MC-001, 2007 WL 869623, at *3 (E.D. Tenn. Mar. 21, 2007); *Morrow v. Air Ride Tech., Inc.*, No. IP-05-113, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006).

LEGAL02/30716324v1

## III. CONCLUSION

For all of the foregoing reasons, State Farm respectfully requests that this Court enter an order quashing the subpoenas issued to Choice Point, Inc. and MostChoice.com, Inc. and grant a protective order as to information sought in the non-party subpoenas.

Respectfully submitted this _29_ day of _February_ , 2008.

_____
CARI K. DAWSON
Georgia Bar No. 213490
KYLE G.A. WALLACE
Georgia Bar No. 734167
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia   30309-3424
(404) 881-7000
(404) 881-7777 (*Facsimile*)
Email: cari.dawson@alston.com
Email: kyle.wallace@alston.com

*Attorneys for Defendant*

Of Counsel:

Wayne J. Lee
Samantha P. Griffin
Kevin W. Reed
Stone Pigman Walther Wittmann, LLC
546 Corondelet Street
New Orleans, LA 70130-3588
(504) 581-3200

LEGAL02/30716324v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MARILYN MELDER, et al.,

         Plaintiffs,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, STATE FARM FIRE
AND CASUALTY COMPANY, et
al.,

        Defendants-Movants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.
2:03-CV-2499*

\* Action is pending in the United
States District Court for the Eastern
District of Louisiana

Miscellaneous Action No.
__1_08·MI-0075__

## CERTIFICATE OF SERVICE

This is to certify that I have this date served **MEMORANDUM OF
LAW IN SUPPORT OF STATE FARM'S MOTION TO QUASH
SUBPOENAS ISSUED BY COUNSEL FOR PLAINTIFFS ON
BEHALF OF THIS COURT TO CHOICE POINT, INC. and
MOSTCHOICE.com, INC. AND FOR A PROTECTIVE ORDER** upon
the counsel for Plaintiffs and interested non-parties in the foregoing matter a
copy of the by U.S. Mail, postage prepaid and addressed as follows:

        Tom W. Thornhill
        Thornhill & Collings, L.C.
        1308 Ninth Street
        Slidell, LA 70458

Choice Point, Inc.
Annette Gaines, Esq., General Counsel
1000 Alderman Drive
Alpharetta, GA 30005

MostChoice.com, Inc.
Ryan L. Isenberg, Esq.
7000 Peachtree-Dunwoody Road, Bldg. 15, Ste. 100
Atlanta, GA 30328

This 29th day of _February_, 2008.

CARI K. DAWSON