IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARILYN MELDER, et al., | |
| Plaintiffs, | CIVIL ACTION FILE NO. |
| v. | 1:08-CV-1274-RWS-JFK |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, et al., | |
| Defendants. | |

## ORDER AND WRITTEN OPINION

Pending before the court is Defendants' motion [Doc. 1] to quash two subpoenas issued from this court by Plaintiffs to non-parties ChoicePoint, Inc. ("ChoicePoint"), and MostChoice.com, Inc. ("MostChoice"). This discovery dispute arises out of litigation pending in the Eastern District of Louisiana, Case Number 2:03-CV-2499. Pursuant to Federal Rules of Civil Procedure 26 and 45, Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company move the court to quash the two Rule 45 subpoenas and to enter a protective order as to the documents sought by the subpoenas.

Also pending before the court are Plaintiffs' motion [Doc. 13] for leave to file a surreply and Plaintiffs' motion [Doc. 9] for oral argument. Plaintiffs' surreply not only addresses facts and arguments brought by Defendants in their reply brief, it also brings the court up to date on the forum court's recent ruling in a related discovery dispute involving the parties. With regard to Plaintiffs' motion for oral argument, the court believes that the parties have adequately addressed all relevant issues in their briefs. Oral arguments, therefore, are unnecessary. Plaintiffs' motion [Doc. 13] for leave to file a surreply is **GRANTED**, and Plaintiffs' motion [Doc. 9] for oral argument is **DENIED**.

**1.   Underlying Case**

The underlying litigation is a putative class action lawsuit which was brought by Plaintiff Melder and a number of other individuals in July 2003 in Louisiana State Court and removed to Federal Court in the Eastern District of Louisiana in September 2003. [Doc. 1]. Plaintiffs allege that Defendants have engaged in racially discriminatory practices involving underwriting, pricing, formation, administration, and renewal of policies through the use of credit scores. [Doc. 1, Ex. B at 14]. According to Plaintiffs, Defendants' discriminatory use of credit scores caused

2

Plaintiffs' insurance policies to be cancelled, rejected, rated up, placed in a higher risk, and/or charged higher premiums. [Id.].

The parties have been and continue to be engaged in a number of discovery disputes before the forum court. The one that is relevant to this court concerns whether Plaintiffs in the underlying case are entitled to discovery involving "credit scoring sales leads" purchased from third parties. On February 18, 2008, while arguments about permissible discovery were continuing in the forum court, counsel for Plaintiffs issued subpoenas from this court to non-parties ChoicePoint and MostChoice commanding the production of "any and all information on sales of leads" which they provided to Defendant "State Farm Mutual Automobile Insurance Company or to any of its subsidiaries." [Doc. 7, Ex. 6]. In a letter dated February 25, 2008, MostChoice informed Plaintiffs' counsel that it "has no documents responsive to the subpoena issued in this matter." [Doc. 7, Ex. 7]. ChoicePoint, on the other hand, informed Plaintiffs' counsel in a letter dated March 4, 2008, that it was "going to withhold [its] response to the subpoena pending the outcome" of the present motion to quash. [Id.].

Until recently, Plaintiffs have not made written discovery requests for credit scoring leads to Defendants. Plaintiffs argued to the forum court that this information had been sought in "Request for Production No. 3" contained in their original request

3

for production of documents. [Doc. 7, Ex. 5 at 5-6]. This specific request asked for "any and all documents indicating any prospective customers for homeowner's or automobile insurance who were declined insurance based on credit score(s). . . ." [Doc. 7, Ex. 5 at 1]. The forum court, in an order filed on March 3, 2008, ruled that this request was not a request for credit scoring leads because "a formal 'declination' of insurance coverage can only occur after there has been a formal application for insurance coverage." [Doc. 7, Ex. 5 at 6]. The forum court also noted at a hearing that Plaintiffs' "counsel essentially attempted to reform the language used in Request No. 3 to seek credit scoring leads purchased from third-party vendors which were purportedly used to limit the pool of individuals to whom solicitations were sent." [Id.]. The court concluded that Plaintiffs had not asked Defendants for credit scoring leads and that Defendants had properly responded to Plaintiffs' Request No. 3. [Doc. 7, Ex. 5 at 6].

In the same order, the forum court wrote, "If plaintiffs are desirous of obtaining pre-application process information they now appear to be seeking, they should propound additional written discovery specifically tailored to that information. Alternatively, plaintiff may wish to take the Rule 30(b)(6) deposition of State Farm to

4

explore what it does with leads information." [Doc. 7, Ex. 5 at 6-7].[1] In response to this order, Plaintiffs served on Defendants in March 2008 a "Second Set of Requests for Production of Documents Propounded to Defendant," which specifically asked for "credit scoring leads from any and all third parties, including but not limited to, MostChoice, Inc., MostChoice.com, Inc., ChoicePoint, Inc., . . ." [Doc. 10, Ex. B at 7]. Plaintiffs also noticed a Rule 30(b)(6) deposition to Defendants and specifically included credit scoring leads purchased from ChoicePoint and MostChoice as a topic of discovery. [Doc. 10, Ex. C]. Defendants subsequently filed in the forum court a "Motion for Protective Order to Quash 30(B)(6) Notice." [Doc. 10, Ex. D]. At a hearing on April 9, 2008, which addressed this motion, the forum court ordered the following:

> At the upcoming deposition of State Farm, the representative(s) can be questioned about any documents defendant previously produced to them; the extent to which credit scoring or race plays in the decisions to market or underwrite insurance or write policies; and what defendant did with any information it obtained from third-party credit reporting agencies.

---

[1] Plaintiffs argue that this language establishes that the forum court "specifically permitted Plaintiff to pursue discovery on the issues of credit scoring leads." [Doc. 7 at 10]. This argument is not persuasive. As Defendants correctly note, the forum court's language could properly be characterized as an invitation to propound discovery. [Doc. 10 at 5]. However, there is no indication that the court was, as Plaintiffs argue, prospectively stating that any discovery involving credit scoring leads was permissible.

5

> All topics are limited to the State of Louisiana and the time period of January 1, 2000 to the present.

[Doc. 13, Ex. A].[2]

## 2.     Defendants' Motions to Quash and for a Protective Order

As noted *supra*, Defendants have filed: (1) a motion to quash the two Rule 45 subpoenas issued from this court to ChoicePoint and MostChoice; and (2) a motion for a protective order as to the documents sought by the subpoenas.[3] [Doc. 1]. The first

---

[2]Plaintiffs argue that the forum court's ruling amounted to an express determination that "Plaintiffs are entitled to 'any information [State Farm] obtained from third-party credit reporting agencies." [Doc. 13 at 5]. Plaintiffs also contend that the forum court's "ruling necessarily implies that Plaintiffs should be permitted to obtain exactly the same sort of information directly from ChoicePoint and MostChoice." [Doc. 13 at 4]. It is not clear that Plaintiffs' understanding accurately reflects the forum court's ruling. While Plaintiffs may be correct that the forum court will permit discovery on credit scoring leads from ChoicePoint and MostChoice, the order merely states that State Farm "representative(s) can be questioned about . . . what defendant did with any information it obtained from third-party credit reporting agencies." [Doc. 13, Ex. A]. The undersigned cannot find with any degree of certainty that the forum court would permit Plaintiffs to obtain everything they sought in the subpoenas.

[3]Defendants argue that the subpoenas should be quashed for a number of reasons. First, Defendants contend that the subpoenas seek information from non-parties that has already been sought by Plaintiffs directly from Defendants in the underlying case. As previously discussed, the information sought by Plaintiffs has been the subject of various motions before the forum court, and Defendants argue that the subpoenas exceed the bounds of permissible discovery as established by the forum court. Second, Defendants argue that the information sought by Plaintiffs extends beyond the scope of the pleadings in the underlying case. Third, Defendants contend

6

issue the court must decide is whether Defendants have standing to bring the present motion to quash the subpoenas issued to ChoicePoint and MostChoice. "[A] party ordinarily lacks standing to quash a subpoena directed at a non-party unless the party is seeking to protect a personal privilege or right." Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004); see also Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (although a party, not the recipient of a subpoena, does not have standing to bring a motion quash, "it appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed.'") (citation omitted)). The court agrees with Defendants when they argue that they have a privilege with respect to the documents and that they have "standing to challenge the subpoenas because among other reasons, Plaintiffs have sought the same information directly from State Farm in the forum court where a contested discovery dispute over disclosure of the documents sought in the subpoenas" has been going on for some time. [Doc. 1 at 7 n.4]. Defendants correctly note that permitting the production of the documents from third-parties without allowing Defendants the

---

that the subpoenas are over broad. [Doc. 1]. As discussed *infra*, because the court has concluded that Defendants' motions should be transferred to the forum court, Defendants' substantive arguments need not be addressed.

7

opportunity to bring a motion to quash would effectively moot the discovery dispute between the parties in the forum court. [Id.]. Accordingly, the court finds that Defendants have standing to bring the motion to quash.

Although the parties disagree about whether Defendants' motion to quash and motion for a protective order should be granted, there is no dispute among the parties or this court that all discovery rulings should be consistent with the rulings of the forum court. [Doc. 1 at 15-17; Doc. 7 at 10-20; Doc. 10 at 6-8]. As a result, this court will defer to the forum court's rulings and management of the case. The forum court, as Defendants correctly note, is "thoroughly familiar with all aspects of this action (pending since 2003) and its convoluted procedural history, [and] is ideally-suited to rule on a dispute concerning the proper scope of discovery." [Doc. 10 at 8]. This court, on the other hand, is not familiar with the various issues of the case and the numerous discovery disputes that the parties have been engaged in for a substantial length of time. Given the forum court's greater familiarity with the case, it seems clear that the forum court in the Eastern District of Louisiana is the court that is best prepared to rule on the present discovery dispute. In light of this fact, the next issue that must be decided is whether Defendants' motion for a protective order and/or their motion to quash may be transferred from this court to the forum court.

8

> Rule 26(c) states in pertinent part:
>
> Upon motion by a party or by the person from whom discovery is sought, . . . the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

Fed. R. Civ. P. 26(c).  Thus, "Rule 26(c), governing protective orders, expressly permits flexibility in cases in which discovery disputes involve multiple courts." United States v. Star Scientific, Inc., 205 F. Supp. 2d 482, 485 (D. Md. 2002); see also Kearney for Kearney v. Jandernoa, 172 F.R.D. 381, 383 n.4 (N.D. Ill. 1997) (noting that "a protective order under Rule 26(c) can be sought/determined in the court where the underlying action is pending, as well as the court from which the subpoena issued").  Additionally, the Advisory Committee Notes to the 1970 revisions to Subdivision (c) sanction remitting such motions to the court where the underlying action is pending: "'The court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending.'"  Star Scientific, 205 F. Supp. 2d at 485 (quoting Fed. R. Civ. P. 26(c), Advisory Committee Notes, 1970 Amendment, Subdivision (c)).  Given the clear language of Rule 26 and the Advisory Committee Notes, there is no question that a

9

Rule 26 motion for a protective order may be transferred or remitted from a court with ancillary jurisdiction over a discovery dispute to the forum court in which the underlying litigation is pending. In the present case, due to the interest in uniform treatment of discovery issues and judicial economy, the undersigned concludes that Defendants' Rule 26 motion for a protective order should be transferred to the trial court in the Eastern District of Louisiana where the underlying litigation is pending.

The court turns next to the issue of whether Defendants' Rule 45 motion to quash may also be transferred to the forum court. The language of Rule 45 does not appear to offer the same flexibility accorded by Rule 26(c). Rule 45(c)(3) provides that the authority to quash, modify, or condition a subpoena resides in "the court by which a subpoena was issued." However, in commenting on the 1991 Amendments to Rule 45, the Advisory Committee Notes state that Subdivision (c) "is not intended to diminish rights conferred by Rules 26-37 or any other authority." The Notes also provide that Rule 45(c)(3) "tracks the provisions of Rule 26(c)." This is significant because, as noted *supra*, the Advisory Committee Notes to Rule 26(c) explicitly provide that a district court "may, and frequently will, remit the deponent or party to the court where the action is pending."

10

Due to the lack of clarity in Rule 45(c) and the Advisory Committee Notes, it is not surprising that there is a split of authority on the issue of whether a court with ancillary jurisdiction over a motion to quash has the authority to transfer the motion to the forum court. See Star Scientific, 205 F. Supp. 2d at 485 n.4 (noting that the Eighth and Tenth Circuits supported such transfers but that the Seventh and District of Columbia Circuits found such transfers inappropriate); see also In the Matter of Friedman's, 356 B.R. 779, 780 (S.D. Ga. 2005) (same). The Eleventh Circuit Court of Appeals has not ruled on this issue.[4] Wright and Miller agree with those courts holding that such transfers are permitted by Rule 45 and state that it is "within the discretion of the district court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending." Charles Alan Wright, Arthur R. Miller, 9A Federal Practice & Procedure § 2463.1 (2008).

While it does not appear that transferring a motion to quash should be the routine practice of a court, many courts faced with special circumstances similar to those found in this case have ordered a transfer. Circumstances which courts have found to justify the transfer of a motion to quash include the non-party's consent to the transfer,

---

[4]In fact, this court has found only one published case, Friedman's, for a court in this circuit addressing this issue.

11

designated Multi-District Litigation ("MDL"), a lack of inconvenience to the non-party, and a determination that the complexity of the underlying litigation and discovery disputes made it appropriate for the forum court to handle the dispute. See, e.g., WM High Yield v. O'Hanlon, 460 F. Supp. 2d 891, 893 (S.D. Ind. 2006) (noting that Seventh Circuit Court of Appeals authorized transfer of motions to quash in MDL); Star Scientific, 205 F. Supp. 2d at 487 (allowing transfer of motion to quash noting non-party sought transfer and close proximity of district courts, the District of Maryland and District of Columbia)[5]; Pactel Personal Communications v. JMB Realty Corp., 133 F.R.D. 137, 139 (non-party consent to transfer allows court, using Rule 26(c) authority, to transfer motion to quash).  In the present case, the court finds that because of the many unusual aspects of the pending discovery dispute, a transfer to the forum court is the most just and efficient way of ruling on Defendants' Rule 45 motion to quash.

---

[5]The court in Star Scientific also noted that the district judge responsible for the litigation in the district in which the underlying case was pending had entered an order expressing "willingness" to decide non-party discovery disputes and had appointed a special master to handle the "voluminous discovery and issues that arise from it[,]" as additional reasons to find that transfer of the motion was appropriate. 205 F. Supp. 2d at 488.

12

The complex nature of the underlying litigation and the disputes involving discovery weighs heavily in favor of transferring the motion to quash to the forum court in the Eastern District of Louisiana. As noted *supra*, both Plaintiffs and Defendants have repeatedly argued that this court's ruling should be consistent with the discovery rulings of the forum court. [Doc. 1 at 15-17; Doc. 7 at 10-20; Doc. 10 at 6-8]. The court agrees with the parties and seeks to defer to the sound judgment of the forum court. The best way to ensure that a ruling on Defendants' motion to quash is consistent with all of the forum court's other discovery rulings is to transfer the motion to the forum court which is much more familiar with this complex case and its lengthy history.

Transfer of Defendants' motion to quash is also warranted because ChoicePoint and MostChoice, the non-party recipients of the subpoenas, have neither brought the motion to quash nor made any arguments in support thereof. ChoicePoint and MostChoice are the only entities involved with this case that have any connection to the Northern District of Georgia, and they have not even made an appearance in this court. Defendants and Plaintiffs are the only ones making arguments relevant to this dispute. Thus, not only is the forum court much more familiar with this case and, therefore, more capable of making an intelligent ruling, no one other than the parties

13

is even involved in the discovery dispute before this court. Based on these facts, the court concludes that the motion to quash filed pursuant to Rule 45 should be transferred to the trial court in the Eastern District of Louisiana.

**3.     Conclusion**

The court **ORDERS** that, pursuant to Federal Rules of Civil Procedure 26 and 45, Defendants' motion to quash and motion for a protective order [Doc. 1] be **TRANSFERRED** to the Eastern District of Louisiana for resolution. Plaintiffs' motion [Doc. 13] for leave to file a surreply is **GRANTED**, and Plaintiffs' motion [Doc. 9] for oral argument is **DENIED**.

**SO ORDERED**, this 25th day of April, 2008.

The Clerk is **DIRECTED** to close this case.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE